PER CURIAM.
Dawn Ann Sobel, appellant herein, and three others were indicted for first-degree murder in the killing of a police officer during an effort to free Sobel’s boyfriend, Eaton, while he was being transported from prison to a dentist. Sobel enlisted the help of a codefendant, Gombos, and participated in the plan to effectuate Eaton’s escape. At the appointed time and place, Sobel and Gombos, both of whom were armed, approached the police van transporting Eaton, and Gombos fired a shotgun that killed one of the officers guarding Eaton. Gombos was convicted of second-degree murder, while Sobel was convicted of first-degree murder in a separate trial. That conviction was affirmed on appeal to this court, 410 So.2d 556, and by the Supreme Court of Florida. Thereafter, Sobel instituted this proceeding for post-conviction relief, which, after an evidentiary hearing, resulted in a denial of the motion. Based upon the record presented, appointed counsel for Sobel has made a very compelling case for post-conviction relief based upon ineffective assistance of counsel.
In her appellate presentation, Sobel contends she is entitled to relief because her counsel, Michael Cohen, failed to investigate, prepare, and try the first-degree murder case for which the defendant was indicted. As a result, Sobel sets forth four grounds that she claims prove her counsel fell below the standard required of adequate counsel in that: 1) her counsel advanced an insanity defense, knowing there was a total absence of any evidence to support it, which destroyed the credibility of the defense; 2) counsel elicited prejudicial testimony from witnesses he knew to be adverse; 3) he failed to pursue pretrial suppression of damaging physical evidence; and 4) he failed to withdraw from further representation despite being instructed to do so by the accused and her family.
Regarding the first ground asserted, although Sobel had no past or present psychiatric history, Michael Cohen had her examined by a psychologist who found she was able to differentiate between right and wrong at the time of the offense. This prompted the state to have her examined by a psychiatrist who came to the same conclusion. With no credible evidence to support such a theory, Michael Cohen, in voir dire and opening statement, announced he would rely on insanity as a defense. With no evidence to support it, the defense was eventually stricken by the court. So-bel argues that pursuing such a theory hurt her credibility with her main defense, which was that, although she had participated in the planning of the escape which included shooting Eaton’s guards, she abandoned her plan to participate and was attempting to warn the deputy at the time of the shooting. She contended she never pulled out her gun.
During the course of the trial, Michael Cohen called the psychologist as a witness, but asked that he be allowed to make a proffer of his testimony, which confirmed the doctor’s conclusion that, at the time of the offense, Sobel knew the difference between right and wrong. With no other testimony to support the insanity defense, the court struck it and disallowed the psychologist’s testimony.
Further, Michael Cohen called Sobel’s mother as a witness and she also testified that at the time of the offense Sobel knew the difference between right and wrong. Another witness called by Michael Cohen was Jean-Paul DuBois, who testified that Sobel was part of the group who planned the Eaton escape and that Sobel was to procure a shotgun and, at the appointed time, was to shoot the deputy guarding Eaton so as to effectuate the escape. So-bel’s stepfather, also called by the defense, testified that he had taught her how to use firearms and that she was a proficient marksman.
After the first week of trial, during the presentation of the defense, Michael Cohen approached the bench and moved the court for a mistrial on the ground that he had been ineffective in his representation of the defendant! The trial judge denied the motion. But the anomaly did not end there. It seems Michael Cohen had employed a young lawyer, James Bonfiglio, who was three months out of law school, to assist *1112 him in the defense of the case. In support of Michael Cohen’s motion for mistrial, Bonfiglio advised the court that, during the previous weekend recess, he had consulted two lawyers and a sitting judge regarding what he perceived as inadequate representation by Michael Cohen. He pointed out Michael Cohen’s assertion of insanity despite no evidence to support it, and the calling of witnesses whose testimony it was known would be prejudicial to Sobel’s case. As a result of his conversations and the advice he received from these other people, he decided to make a motion for mistrial and so advised both the state and Michael Cohen. This apparently prompted Michael Cohen to make the motion himself.
The final major breach of ordinary trial procedure raised by Sobel was Michael Cohen’s failure or refusal to seek suppression of the physical evidence that the police obtained by searching Sobel’s handbag. The items found therein ultimately led to her confession. Sobel contends that a motion to suppress had a good chance of being granted, which in turn would have precluded use of a great deal of evidence that flowed from the illegal search. At the evidentiary hearing, Michael Cohen acknowledged that he knew of the incriminating nature of that evidence, but he simply failed to take any steps to suppress it.
During the rule 3.850 evidentiary hearing leading to the order appealed from, Bonfig-lio testified that he participated in the pretrial preparation of the case and, although a neophyte, he was concerned over Michael Cohen’s defense strategy. He knew there was no evidence to support the insanity defense and told Michael Cohen so. He also advised Michael Cohen that, based on DuBois’s pretrial statement, he would certainly hurt the defendant’s case. When he questioned Michael Cohen as to why he persisted in calling the witness anyway, Michael Cohen had no explanation. Bon-figlio testified that Sobel became very dissatisfied with Michael Cohen as a result of this turn of events. Both she and her mother, who hired Michael Cohen, attempted to discharge Michael Cohen, but he refused to leave the case. Finally, Michael Cohen admitted at the rule 3.850 hearing that at the time of trial he was experiencing health problems that affected his handling of the case and militated against So-bel’s best interests.
A thorough examination of the record of the proceedings in the trial court compels the conclusion that Michael Cohen’s representation of Sobel fell substantially below reasonable standards for competent counsel, deprived her of a fair trial, and produced a verdict of questionable reliability. So inadequate was counsel’s performance that we are convinced there is a reasonable probability that with proper representation the jury might well have returned a verdict of guilty of a lesser crime than first-degree murder.
It is interesting to note that, in the Florida Supreme Court’s opinion reviewing this court’s decision affirming Sobel’s conviction, Justice Overton dissented from that portion of the opinion refusing to treat her contention that she had ineffective assistance of counsel in the trial court. Justice Overton pointed out that this case was not subject to the usual refusal to treat ineffective assistance of counsel on direct appeal where the trial court has never considered that issue. Since Michael Cohen had made a motion in the trial court for a mistrial based upon his own ineffectiveness, the trial court’s denial thereof made that issue appropriate for consideration in the district court of appeal (which struck it without explanation) and in the supreme court. In discussing the record made below, Justice Overton suggested that the record reflected a real issue regarding the effectiveness of counsel, stating:
The record in this case reflects that defense counsel, in the middle of the second week of trial, moved for a mistrial, stating to the court that he had had health problems through the summer prior to trial and that “there were things I should have done in Dawn’s case that I didn’t, and I didn’t do them.” He stated that he had failed to properly prepare for the case and that there was lack of communication between himself and his client. Further, a young lawyer who was associated with him for the trial of the case *1113 expressed to the judge his concern for how the case was handled; he stated that the ease disturbed him to the extent that he had discussed it with two other attorneys during the weekend recess and they had agreed that under the circumstances the petitioner’s counsel was ineffective and a motion for mistrial would be appropriate. The specific examples given of ineffective counsel were the failure to make motions, the improper assertion of the insanity defense, and the failure to properly investigate the case.
[[Image here]]
The trial judge in this instance expressed concern that to grant a mistrial for ineffective assistance of counsel would set a dangerous precedent, opening the door for this issue to be used in a tactical manner in criminal trials. I disagree with the trial judge’s concern. Although a defendant may be entitled to a mistrial because his counsel was dilatory and unprepared, that does not mean that there is no recourse to avoid the improper use of our criminal justice process. Counsel guilty of such conduct would be subject to sanctions which could include counsel personally paying the costs and expenses of the trial up to the time of the mistrial, in addition to counsel being subject to appropriate disciplinary proceedings. I reject the view asserted by the attorney general that trial counsel is neither legally nor ethically competent to raise his own ineffectiveness before the trial judge. In Valle v. State, 394 So.2d 1004 (Fla. 1981), we recognized that it was a proper issue to be brought up by trial counsel where the failure to prepare was brought about by the speed in which the case was brought to trial and not by trial counsel’s dilatory action. In this case, counsel’s alleged ineffectiveness was argued to have been caused, at least in part, by defense counsel’s physical condition. In both instances counsel was unprepared.
I would find that on this record the trial judge should have taken more time to have a hearing on the issue. The contentions of counsel are basically unre-futed and, therefore, on this record, I must find that a mistrial should have been granted. I also would find, however, that the conduct of petitioner’s counsel justified sanctions in the amount of the cost of the proceedings up to the time of the motion for mistrial.
Sobel v. State, 437 So.2d 144, 146-147 (Fla.1983).
In view of the foregoing, the judgment appealed from is reversed and the cause is remanded to the trial court with directions to grant Sobel a new trial.
DOWNEY and WALDEN, JJ., concur.
HERSEY, C.J., dissents with opinion.